## CHIPPEWA INDIANS OF MINNESOTA *v.* UNITED STATES.

No. 666.   Argued March 30, 1939.—Decided April 17, 1939.

*Mr. Donald S. Holmes,* with whom *Mr. Webster Ballinger* was on the brief, for appellants.

*Mr. Raymond T. Nagle,* with whom Solicitor General Jackson, Acting Assistant Attorney General Collett, and Messrs. *C. W. Leaphart* and *William R. Sherwood* were on the brief, for the United States.

1

2

Mr. Justice Roberts delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Claims [1] dismissing a suit brought to compel restoration of trust funds alleged to have been diverted by the appellee.

In 1926 Congress granted permission for the bringing of the suit, [2] which was instituted April 13, 1927. In order to permit the claim to be presented in its present form the permissive act was amended in 1934. [3] The appellants then filed an amended petition to which the appellee responded by a general traverse. The right of appeal from the judgment of the Court of Claims is conferred by Joint Resolution of June 22, 1936. [4]

The suit is for the enforcement of equitable claims arising under or growing out of the Act of January 14, 1889. [5] The appellants' theory is that the Act constituted an offer on the part of Congress for an agreement with the bands of Chippewas located in Minnesota, whereby, if these bands would cede the Indian title to their reservations, (which they did), the United States would sell the timber thereon and open the agricultural lands to settlement, and hold the proceeds of the timber and the lands, in trust, to expend the income for purposes specified in the statute, including payment of a portion of such income to the Indians, and to distribute the principal at the expiration of fifty years after allotments had been completed to all the members of the various bands on specified reservations.

---

[1] 88 Ct. Cls. 1.

[2] Act of May 14, 1926, c. 300; 44 Stat. 555, as amended by Acts of April 11, 1928, c. 357, 45 Stat. 423, and June 18, 1934, c. 568, 48 Stat. 979.

[3] Act of June 18, 1934, c. 568, 48 Stat. 979.

[4] c. 714, 49 Stat. 1826.

[5] 25 Stat. 642.

The circumstances leading to the adoption of the Act and its relevant sections appear in earlier decisions of this Court and need not here be repeated.[5]

The appellants assert that, by the Act of 1889, Congress abdicated its plenary power of administration of the Chippewas' property as tribal property, recognized that the reservations of the respective bands were not tribal property, and agreed to hold the proceeds of the ceded lands in strict and conventional trust for classes of individual Indians in accordance with the program outlined in the Act.

In this view the living Chippewas are beneficiaries of the income of the fund during the fifty year period, and individual Chippewa Indians who may be living at the expiration of the period, as a class, are remaindermen. It is urged that, as Congress has, from time to time, reimbursed the Treasury for expenditures for the benefit of the Chippewa Indians of Minnesota out of the fund, and has authorized other direct expenditures from the fund for the benefit of the Indians in ways not authorized by the Act, the United States has been guilty of a diversion of trust funds and that the appellants, as the representatives of the remaindermen, are entitled, on plain principles of equity, to demand restoration of the diverted sums to the corpus.

If, as the Court of Claims has found, the Act of 1889, and the cessions made pursuant to it, did not create a technical trust, we are relieved from considering many of the contentions pressed by the appellants in that court and here. We are of opinion that the Court of Claims was right in its decision that no such trust was created.

The original tribal status of the Chippewas is described in *Wilbur* v. *United States,* 281 U. S. 206, 208,

---

[5] *Wilbur* v. *United States,* 281 U. S. 206, 209, 210; *Chippewa Indians* v. *United States,* 301 U. S. 358, 362.

and *Chippewa Indians* v. *United States,* 301 U. S. 358, 360. It is unnecessary now to restate what was there said on the subject.

It is true that, prior to the adoption of the Act of 1889, the tribe had been broken up into numerous bands, some of which held Indian title to tracts in the State of Minnesota. The Act refers to these collectively as "The Chippewas in the State of Minnesota." Whether or not the tribal relation had been dissolved prior to its adoption, the Act contemplates future dealings with the Indians upon a tribal basis. It exhibits a purpose gradually to emancipate the Indians and to bring about a status comparable to that of citizens of the United States. But it is plain that, in the interim, Congress did not intend to surrender its guardianship over the Indians or treat them otherwise than as tribal Indians.

This is evidenced by a series of acts, the first of which was adopted nineteen months after the Act of 1889, which are inconsistent with the view that the Congress considered the Indians as emancipated or intended to enter into a binding contract with them as individuals.[7] Many of these statutes refer to the Chippewas of Minnesota as a tribe.[8] Moreover, an examination of the Act

---

[7] Aug. 19, 1890, c. 807, 26 Stat. 336, 357. Between 1890 and 1926 Congress appropriated, either from the fund created under the Act of 1889 or from public funds reimbursable therefrom, a total of $5,105,059 for the civilization and support of the Chippewas. (Findings 9, 10, 15.) During the period 1889 to 1934 Congress authorized the expenditure of public funds totaling $5,065,878 for the use and benefit of the Chippewas without any provision for reimbursement. (Finding 20.)

[8] Aug. 1, 1914, c. 222, 38 Stat. 582, 592; May 18, 1916, c. 125, 39 Stat. 134, 135; March 2, 1917, c. 146, 39 Stat. 969, 979; May 25, 1918, c. 86, 40 Stat. 561, 572; June 30, 1919, c. 4, 41 Stat. 3, 14; February 14, 1920, c. 75, 41 Stat. 408, 419; November 19, 1921, c. 133, 42 Stat. 221; January 30, 1925, c. 114, 43 Stat. 798; February 19, 1926, c. 22, 44 Stat. 7; March 4, 1929, c. 705, 45 Stat. 1562, 1584.

of 1889 discloses that it is not cast in the form of an agreement; and, we may not assume that Congress abandoned its guardianship of the tribe or the bands and entered into a formal trust agreement with the Indians, in the absence of a clear expression of that intent.

It is not contended that the expenditures made from the fund, or reimbursed from it, were not for the benefit of the Indians or were not such as properly might be made for their education and civilization, the purposes stated in the Act of 1889.

We hold that the Act did not tie the hands of Congress so that it could not depart from the plan envisaged therein, in the use of the tribal property for the benefit of its Indian wards.

The judgment of the Court of Claims is

*Affirmed.*