**The SIOUX TRIBE OF INDIANS**

v.

**The UNITED STATES.**

No. 74.

United States Claims Court.

Oct. 21, 1983.

Arthur Lazarus, Marvin J. Sonosky, and William H. Payne, Washington, D.C., for plaintiffs.

Craig A. Decker, Washington, D.C., with whom was Acting Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C., for defendant.

## ORDER REGARDING SETTLEMENT OFFER

YOCK, Judge.

The claims in this case involve the appropriate valuation to be placed on lands ceded by the Sioux Nation Tribes to the United States pursuant to the Treaty of April 29, 1868, 15 Stat. 635. This case, or portions thereof, have been in litigation for more than 60 years. *Sioux Tribe of Indians v. United States,* 84 Ct.Cl. 16, 19 (1936), *cert. denied,* 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed.

554 (1937). The issues remaining concern the amount of Government offsets, if any, to be deducted from the interlocutory land valuation award of $43,949,700. *See Sioux Tribe v. United States,* 42 Ind.Cl.Comm. 208 (1978) (Opinion on Defendant's Motion to Enter Adjustments in Valuation Award); *Sioux Tribe et al. v. United States,* 42 Ind. Cl.Comm. 257 (1978) (Final Award); *see also United States v. Sioux Tribe, et al.,* 222 Ct.Cl. 421, 616 F.2d 485 (1980). The Government claims some $65,000,000 in valid offsets. The offset issues are complex and difficult. Several hundred thousand pages of exhibits have already been presented to the Court and its predecessor tribunals. The historical evidence phase of the offset issues was tried by this Court in a four-day hearing conducted on May 10–13, 1982. The final accounting phase of the offsets issue will be tried after six separate summary judgment motions on legal issues have been heard and decided.

In view of the complexity of the issues presented and the length of time necessary to complete the litigation in this matter, this Court has consistently pressed the parties to explore all avenues leading to an appropriate end to this litigation including possible settlement. In the distant past, counsel for the parties had in fact agreed to a settlement which would have disposed of this case. However, that prior proposed settlement failed because the governing bodies of six of the eight Sioux tribes of the Sioux Nation took no action on the settlement offer.

Following the completion of the historical phase of the offsets trial, concluded on May 13, 1982, the parties again indicated their willingness to try for a negotiated settlement. Shortly thereafter, counsel for the respective tribes of the Sioux Nation and for the Government reported to the Court that they had again achieved a settlement agreement that they considered in the best interest of all the parties, and that counsel to the tribes would therefore be submitting the offer to their respective tribal governing bodies. However, on September 17, 1982, counsel for the parties again reported

at a status conference with the Court that several of the respective tribal bodies would not consider the negotiated settlement offer. In other words, the tribal governing bodies simply refused to respond to or even consider the settlement offer. Thus, the proposed settlement agreement was again dead in the water.

This lack of interest in prosecuting this claim to completion on the part of the parties to this law suit is appalling and will not be further tolerated.

This *Sioux Nation* case is one of many cases transferred to this Court's predecessor court (and now this Court) after pending before the Indian Claims Commission for more than a quarter of a century. Our predecessor court, the United States Court of Claims, with much experience in Indian claims, imposed upon its trial judges an obligation "to expedite these cases, and to take all necessary steps to insure their speedy determination." *Navajo Tribe of Indians v. United States,* 220 Ct.Cl. 360, 367–68, 601 F.2d 536, 540 (1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *see Cheyenne-Arapaho Tribe of Indians of Oklahoma, et al. v. United States,* Ct.Cl. Nos. 342–70 and 343–70 (Order filed October 5, 1983); *Minnesota Chippewa Tribe v. United States,* 227 Ct.Cl. 538, 542 (1981). In view of these recent directives that Indian claims be expedited and that further delay be curtailed, all avenues must be pursued in the disposition of this very old claim. Settlement is one very available and essential avenue. As such, the negotiated settlement must be formally presented to the respective tribes of the Sioux Nation and dealt with through their lawful and constitutionally-provided governing bodies. Failure to present this formal offer will result in many more years of litigation, confusion and delay.

Failure to present this negotiated offer of settlement to the governing tribal bodies, or refusal on the part of the tribal governing bodies of the Sioux Nation to consider the offer of settlement negotiated in good faith for the benefit of the respective parties, would justify the exercise of this Court's inherent power to dismiss for lack of prosecution "so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *see RFI ShieldRooms v. United States,* 218 Ct.Cl. 642 (1978). The exercise of such discretion is well within this Court's authority. *See* Rules of the United States Claims Court 41(b).

This Court is well aware of the sensitive and complex nature of this matter. It is not unmindful of the competing interests and views of the various members of the several tribes that make up the Sioux Nation. However, when citizens and groups invoke the jurisdiction of the courts of the United States, they must be prepared to prosecute to completion their claims with all due dispatch. Indian tribes are no different in this connection than any other litigant. *See Temoak Band of Western Shoshone Indians v. United States,* 219 Ct.Cl. 346, 354–55, 593 F.2d 994, 998–99, *cert. denied,* 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979). This Court has the authority to issue money judgments only; it does not have the authority to decide questions of title to land. *See* 28 U.S.C. § 1491 (Supp. V 1982). This case *does not* involve any question about title to land. It only involves entitlement to money. If the theory of the current litigation no longer is appropriate for the parties' purposes, then the courts have the inherent right, indeed the duty, to terminate that litigation so that others in this diverse land may come forward and be heard by their sovereign. The respective counsel in this case would be remiss in their duty to their clients and to this Court if they fail to submit to the tribes this negotiated settlement offer with their respective recommendations. *See Thompson, et al. v. United States,* 13 Ind.Cl. Comm. 369, 536 (1964). Likewise, if the respective tribal governing bodies fail to respond to this settlement offer by refusing to consider the offer in good faith and according to the provisions of their tribal laws and constitutions, then they too are remiss in their duties to this Court. *See Cheyenne-Arapaho Tribe of Indians of*

*Oklahoma, et al. v. United States,* Ct.Cl. Nos. 342–70 and 343–70 (Order filed October 5, 1983).

It should be noted in this connection that the tribes' respective counsel in this action, and related actions, have done an excellent job in representing their clients before this Court and its predecessor tribunals. *See, e.g., Sioux Nation of Indians, et al. v. United States,* 220 Ct.Cl. 442, 601 F.2d 1157 (1979), *aff'd, United States v. Sioux Nation,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). They have represented the tribes with uncommon skill, competence, diligence and fairness. It is anticipated that that same degree of uncommon skill, competence, fairness and diligence will be exhibited in connection with this settlement offer in order that the best interests of all of the members of the tribes of the Sioux Nation will be considered, protected and ultimately enhanced.

Therefore, based on the above discussion, the respective counsels for the tribes included in this Sioux Nation litigation are hereby ordered to submit to the tribes' governing bodies the settlement offer, their explanation of the offer and their recommendations on the offer. Counsel are further directed to hold whatever follow-up meetings are deemed essential by either the tribal governing bodies or their counsel in order to further explain any matters needing elaboration, at appropriate geographical locations, or by telephonic communication. Within 30 days of the date of this order, counsel are to submit this written material to the tribes, together with a copy of this order, by registered or certified mail. Counsel shall report the submission of this settlement material along with proof of receipt by filing the same with the Clerk of this Court in an appropriate status report document.

The respective tribal governing bodies of the Sioux Nation tribes involved in this litigation are hereby ordered to consider the offer of settlement, explanation of same, and counsel recommendations, and act on such offer according to the laws and constitution of their respective tribes within 90 days of receipt of the written material from their respective counsel. A final decision for or against the pending offer of settlement shall be made and will be communicated in writing to their respective counsel by the tribal governing bodies.

Within 120 days of receipt by the tribes of the offer of settlement materials, the respective counsel shall file a status report with the Clerk of this Court together with a copy of the written responses of the tribes to the offer of settlement. The copy of the tribes' responses should have the actual dollar figure of the settlement offer deleted before submission to the Court.

IT IS SO ORDERED.